UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| GREGORY A. SWITZER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:18-cv-1421 |
| | ) |
| THE VILLAGE OF GLASFORD, | ) |
| ILLINOIS, & ANDREW BURGESS, | ) |
| | ) |
| Defendants. | ) |

## ORDER AND OPINION

Now before the Court is Defendants' Combined Motion to Dismiss Plaintiff's Amended Complaint. Doc. 13. Plaintiff filed a timely Response to that Motion. Doc. 15. For the reasons that follow, Defendants' Motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiff, Gregory A. Switzer, is a resident of the Village of Glasford, Peoria County, Illinois. Defendant Andrew Burgess ("Burgess"), a police officer employed by Defendant Village of Glasford, Illinois ("Glasford"). Glasford owns, operates, maintains, and otherwise controls the Glasford Police Department. Doc. 11, p. 2.

On September 30, 2015, Burgess arrested Plaintiff in Peoria County for driving under the influence of alcohol. Plaintiff claims Burgess was carrying out a policy and practice of falsely creating criminal charges because, at the time of the arrest, Burgess allegedly stated he was "trying to make the charges go in such a direction." Plaintiff was subsequently booked, housed, and incarcerated at the Peoria County Jail, although he bonded out within 24 hours after his arrest. According to Plaintiff, Burgess detained, arrested, and prosecuted Plaintiff without

1

probable cause or justification, and additionally swore to a false complaint and falsely testified. Doc. 11, pp. 2–4.

On January 19, 2016, the Circuit Court of Peoria County granted Plaintiff's Motion to Quash Evidence of Intoxication because it concluded Burgess lacked probable cause to arrest Plaintiff. A Motion to Reconsider from the prosecution was denied on August 2, 2016. Following an appeal by the State of Illinois, the Motion to Quash Evidence of Intoxication Order was affirmed, and on November 22, 2017, a petition for leave to appeal to the Illinois Supreme Court was denied. On December 7, 2017, the case against Plaintiff was dismissed in Peoria County Circuit Court. Doc 10, pp. 1–2; Doc. 11, p. 3. *People of the State of Illinois v. Gregory A. Switzer*, Case No. 15 DT 502 (January 19, 2016), *Aff'd* 2017 Ill. App. (3d) 160441-U.

Plaintiff filed his original Complaint in this Court on November 21, 2018, raising various claims stemming from his arrest and detention. Doc. 1. On February 4, 2019, this Court granted Plaintiff leave to file an amended complaint with regard to alleging a proper *Monell* claim against Glasford. Doc. 10. Plaintiff filed a timely Amended Complaint on February 25, 2019. Doc. 11.

Plaintiff's Amended Complaint is a five-count civil action for damages relating to his alleged wrongful prosecution at the hands of the Glasford Police Department. Specifically, Plaintiff alleges "malicious prosecution" claims against Burgess under both §1983 and Illinois Law (Counts I and III, respectively); *respondeat superior* "malicious prosecution" claims against Glasford under both §1983 and Illinois law (Counts II and IV, respectively); and an Illinois law indemnification claim against Glasford (Count V). Doc. 10, p. 2.

On April 1, 2019, Defendants Glasford and Burgess filed a Combined Motion to Dismiss Plaintiff's Amended Complaint (Doc. 13), to which Plaintiff responded on April 29, 2019. Doc.

15. In their Motion, Defendants request dismissal of Plaintiff's federal law claims (Counts I and II) pursuant to Fed. R. Civ. P. 12(b)(6), and dismissal of Plaintiff's state law claims (Counts III, IV, and V) pursuant to Fed. R. Civ. P. 12(b)(1). Doc. 13, p. 1. The outcome of their Motion turns on whether Plaintiff was ever seized by Defendants for Fourth Amendment purposes, the date such seizure ended, and when the statute of limitations thus began to run. This Order follows.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) challenges whether a complaint sufficiently states a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Court accepts well-pleaded allegations in a complaint as true and draws all permissible inferences in favor of the plaintiff. *See Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015). To survive a motion to dismiss, the complaint must describe the claim in sufficient detail to put defendants on notice as to the nature of the claim and its bases, and it must plausibly suggest that the plaintiff has a right to relief. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). A complaint need not allege specific facts, but it may not rest entirely on conclusory statements or empty recitations of the elements of the cause of action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## DISCUSSION

Defendants have moved to dismiss Plaintiff's Amended Complaint on three grounds: (1) Plaintiff was never seized as contemplated by the Fourth Amendment; (2) since the alleged Fourth Amendment seizure in Count I either did not occur or occurred outside the statute of limitations, the *Monell* claim is not actionable; and (3) this Court should relinquish jurisdiction over the remaining state law claims on the basis that the federal claims should be dismissed.

Defendants request dismissal of Plaintiff's federal law claims (Counts I and II) pursuant to Federal Rule of Civil Procedure 12(b)(6), and dismissal of Plaintiff's state law claims (Counts III, IV, and V) pursuant to Fed. R. Civ. P. 12(b)(1). Doc. 13, pp. 1, 11–12. The Court will examine each argument in turn.

1. **COUNT I—MALICIOUS PROSECUTION (federal claim against Burgess)**

Count I of Plaintiff's Amended Complaint asserts a federal malicious prosecution[1] claim against Burgess, alleging Plaintiff's arrest and prosecution were without probable cause or justification. Doc. 11, p. 3. Defendants request dismissal of Count I on the grounds Plaintiff was never seized as contemplated by the Fourth Amendment, and thus has no Fourth Amendment claim for unlawful detention. Doc. 13, p. 2. Defendants argue, first, Plaintiff was never actually seized because his pretrial release restrictions were not an onerous restriction on travel nor a significant restriction on liberty, and second, assuming *arguendo* Plaintiff was seized, his seizure ended (and the statute of limitations began to run) on October 1, 2015, making Plaintiff's claims time-barred. Defendants additionally assert, to the extent Count I is a false arrest claim, the statute of limitations has expired. In his Response, Plaintiff stated he was not asserting a false arrest claim, so the Court need not address the argument.

The Supreme Court has held that pretrial detention without probable cause is actionable under §1983 as a violation of the Fourth Amendment. *Mitchell v. City of Elgin*, 912 F.3d 1012, 1013 (7th Cir. 2019) (citing *Manuel v. City of Joliet ("Manuel I")*, 137 S. Ct. 911, 920 (2017)); 42 U.S.C. §1983. However, the Court left open the question of when the claim accrues. *Id*. Although *Manuel v. City of Joliet ("Manuel II")*, 903 F.3d 667 (7th Cir. 2018), determined that a

---

[1] As this Court previously noted, there is no such thing as a §1983 "malicious prosecution" claim in this circuit; such a claim may only arise under the Fourth Amendment as a detention unsupported by probable cause. Doc. 10, p. 3; *see Manuel v. City of Joliet, Ill.*, 903 F.3d 667, 670 (7th Cir. 2018) (*Manuel II*).

claim for unlawful pretrial detention under the Fourth Amendment accrues when the detention ends, the Seventh Circuit declined to decide whether a plaintiff's pretrial release on bond constitutes a prolonged seizure within the meaning of the Fourth Amendment. That is the core of the case at hand. On June 20, 2019, the Supreme Court held that the statute of limitations for a fabricated-evidence claim does not begin to run until the criminal proceedings against the defendant (i.e., the §1983 plaintiff) have terminated in his favor. *See McDonough v. Smith*, 139 S. Ct. 2149 (June 20, 2019).

**A. Plaintiff was seized for Fourth Amendment purposes pursuant to the *Mendenhall* standard**

Initially, Defendants assert Plaintiff was never seized as contemplated by the Fourth Amendment because his pretrial release restrictions were not an onerous restriction on travel, nor a significant restriction on liberty. Plaintiff's pretrial release conditions are provided as follows: Plaintiff must (1) appear for future hearings; (2) submit to the orders and process of the court; (3) not depart the state without leave; (4) give written notice of any change of address; and (5) not violate any criminal statutes. Ex. 1. Defendants further argue Plaintiff was never actually housed or incarcerated, but rather, he was arrested "at such a late time that Plaintiff did not arrive to the jail until the early morning hours of the next day[.] Plaintiff was simply booked and released on October 1, 2015." Doc. 13, pp. 2–4.

The "Fourth Amendment's requirement that searches and seizures be founded upon an objective justification, governs all seizures of the person." *United States v. Mendenhall*, 446 U.S. 544, 551 (1980). Most importantly, this includes "seizures that involve only a brief detention short of traditional arrest," as is the case here. *Id*. (citing *Davis v. Mississippi*, 394 U.S. 721 (1969)). Obviously, not every interaction between citizens and the police involve "seizures of persons." *Id*., at 552 (quoting *Terry v. Ohio*, 392 U.S. 1, 16–19 (1968)). A court may conclude a

5

seizure occurred "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Id*. In sum, an actionable Fourth Amendment seizure exists if, when viewed in light of the totality of the circumstances, "a reasonable person would have believed that he was not free to leave." *Id*., at 554.

Here, the totality of the circumstances indicate that a seizure did, in fact, occur. While Defendants focus on the travel restrictions stipulation, it is not the only factor the Court considers. Plaintiff was pulled over, arrested, physically placed into a police car, taken to Peoria County Jail, required to bond out of jail, and also had travel restrictions placed upon him. Doc. 15, p. 2. Under the *Mendenhall* standard, Plaintiff surely did not feel he was free to leave the backseat of a police vehicle—let alone leave the jail where law enforcement was currently booking him for a crime—even if he did understand that he could request permission to leave the state while on pretrial release. Defendants' specific emphasis on "onerous travel restrictions" as the threshold for a seizure overlooks the fact of his initial detention. Moreover, the Court assesses the entirely of the restrictive situation, not just the pretrial release travel restrictions. A plaintiff's liberty may certainly be restrained in other ways, as it was here. *See United States v. Mendenhall*, 446 U.S. 544 (1980).

Additionally, Defendants seem to incorrectly equate a seizure with spending time in jail. The Supreme Court has previously offered examples of circumstances that might indicate a seizure without physical incarceration. Such examples include, but are not limited to, "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall*, 446 U.S. at 554; *see*

*Terry*, 392 U.S. at 19. Since the Supreme Court has not specified that a Fourth Amendment seizure must physically incarcerate the seized individual, Defendants' argument is unpersuasive.

Accordingly, because Plaintiff's liberty was restrained when he was allegedly arrested without cause, and because he reasonably believed that he was not free to leave, a seizure did occur on the evening of September 20, 2015.

### B. Plaintiff's pretrial release on bond constitutes an ongoing seizure, and thus Plaintiff's statute of limitations did not begin to run until his seizure ended on December 7, 2017

Next, Defendants argue that any recognizable seizure must be limited in time and scope to any actual detention that did occur. From Defendants' perspective, Plaintiff did not remain seized within two years of the date of the filing of his original Complaint, and thus his claims fall outside the statute of limitations. Plaintiff was arrested late in the evening of September 30, 2015, released on bond on October 1, 2015, and filed his original Complaint more than two years later on November 21, 2018. Doc. 1; Ex. 1 and 2. Because a seizure did occur as alleged in Count I, the question in this case becomes when the statute of limitations begins to run—either upon Plaintiff's pretrial release on October 1, 2015, or when the charges were dismissed on December 7, 2017.

#### i. Continuing Seizures

It is true that the concept of a "continuing seizure" has been previously rejected by the Seventh Circuit. *Wilkins v. May*, 872 F.2d 190, 194 (7th Cir. 1989). However, several "sister circuits" have adopted the minority approach that "pretrial release might be construed as a 'seizure' for Fourth Amendment purposes if the conditions of that release impose significant restrictions on liberty." *Mitchell v. City of Elgin*, 912 F.3d 1012, 1016 (7th Cir. 2019). Such significant restrictions have been broadly defined. For example, the Court in *Evans v. Ball*, 168

F.3d 856, 861 (5th Cir. 1999), held that a seizure occurred where the plaintiff had to "obtain permission before leaving the state, report regularly to pretrial services, sign a personal recognizance bond, and provide federal officers with financial and identifying information." *Evans*, 168 F.3d at 861. Moreover, the Second and Third Circuits have characterized "the obligation to appear in court, standing alone," as an actionable ongoing seizure." *Mitchell*, 912 F.3d at 1016. *See Black v. Montgomery County*, 835 F.3d 358, 366-67 (3d Cir. 2016); *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013). Understanding this position is the minority, there is still "out-of-circuit support for the proposition that the concept of 'seizure' under the Fourth Amendment extends beyond physical detention." *Mitchell*, 912 F.3d at 1016.

Moreover, the Supreme Court has previously advised that "the common law may aid contemporary inquiry into the meaning of the Amendment's term 'seizure.'" *Albright v. Oliver*, 510 U.S. 266, 277 (1994); *see California v. Hodari D.*, 499 U.S. 621, 626 (1991). "At common law, an arrested person's seizure was deemed to continue even after release from official custody." *Albright*, 510 U.S. at 277-78. Since the purpose of a common-law arrest was "only to compel an appearance in court," that purpose is "equally answered, whether the sheriff detains [the suspect's] person, or takes…bail." *Id.*, at 278. Thus, the common law regards the difference between "pretrial incarceration and other ways to secure a defendant's court attendance as a distinction between methods of retaining control over a defendant's person, not one between seizure and its opposite." *Id*. As the *Albright* Court acknowledged,

> A defendant incarcerated until trial no doubt suffers greater burdens. That difference, however, should not lead to the conclusion that a defendant released pretrial is not still 'seized' in the constitutionally relevant sense. Such a defendant is scarcely at liberty; he remains apprehended, arrested in his movements, indeed 'seized' for trial, so long as he is bound to appear in court and answer the state's charges.

*Id.*, at 279.

Here, in order to prevent alleged police misconduct from escaping Fourth Amendment oversight, it is appropriate to find that Plaintiff's pretrial release on bond is classified as a significant restriction on liberty. Accordingly, pretrial release on bond is included in the definition of a Fourth Amendment seizure.

### ii. The *McDonough* Standard

In June 2019, the Supreme Court faced a similar predicament in *McDonough v. Smith*, 139 S. Ct. 2149 (June 20, 2019), which is dispositive to the issue presented here. Similar to how Burgess allegedly falsely swore in a complaint and falsely testified, the defendant in *McDonough* fabricated evidence and presented fabricated testimony. The Court held that the statute of limitations for a fabricated-evidence claim, and ultimately for a §1983 plaintiff, does not begin to run until the criminal proceedings against the defendant have terminated in his favor. *McDonough*, 139 S. Ct. at 2155.

This favorable termination requirement "applies whenever 'a judgment in favor of the plaintiff would necessarily imply' that his prior conviction or sentence was invalid." *Id.*, at 2157 (citing *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)). "The soundness of this conclusion is reinforced by the consequences" that would otherwise follow, such as imposing a "ticking limitations clock on criminal defendants as soon as they become aware that fabricated evidence has been used against them." *Id.*, at 2158.

In sum, under the *McDonough* standard, the statute of limitations for a §1983 plaintiff begins to run "when the criminal proceedings against him are terminated in his favor." *Id.*, at 2161. For McDonough, that meant when he was acquitted at the end of his second trial; for Plaintiff, that means when his charges were dismissed on December 7, 2017. Applying the two-year statute of limitations to the accrual date of December 7, 2017, Plaintiff's Complaint is

timely so far as it was brought before December 7, 2019. Plaintiff's claim is therefore timely as his original Complaint was filed on November 21, 2018.

Here, for the aforementioned reasons, Plaintiff's pretrial release on bond can be classified as a significant restriction on liberty and, since the Supreme Court has now provided favorable authority, is thus included in the definition of a Fourth Amendment seizure. Accordingly, Defendants' Motion to Dismiss with respect to Count I is DENIED.

2. **COUNT II—*Monell* Claim (federal claim against Glasford)**

Count II asserts a *Monell* claim against Glasford, alleging the Village of Glasford had a policy and practice of committing the aforementioned violations. Doc. 11, p. 4. Defendants request dismissal of Count II on the grounds that, since the Fourth Amendment seizure in Count I either did not occur or occurred outside the statute of limitations, the *Monell* claim is not actionable. Defendants claim Plaintiff failed to allege sufficient facts to articulate a claim pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and that Count II is an implausible "epitome of threadbare recital of the elements." Doc. 13, p. 12.

"Under *Monell*, a local government entity is liable for damages only if a plaintiff can show that the alleged constitutional violation occurred as a result of an official policy, custom, or practice." *Clemons v. Dart*, 168 F. Supp. 3d 1060, 1072 (N.D. Ill. 2016) (citing *Monell*, 436 U.S. at 694). *Monell* therefore "requires a plaintiff suing a municipality or comparable entity to demonstrate that the entity's official policy, widespread custom, or action by an official with policy-making authority was the 'moving force' behind his constitutional injury." *Dixon v. County of Cook*, 819 F.3d 343, 348 (7th Cir. 2016).

Here, Plaintiff fails to sufficiently demonstrate an official policy, widespread custom, or action by a policy-maker to allege a *Monell* claim. Plaintiff's Amended Complaint alleges

Burgess "was carrying out Village policy and practice of falsely creating criminal charges, such as driving under the influence of alcohol, when there existed no evidence to support such charge." Doc. 11, p. 4. He attempts to support this allegation by providing that, "in making the arrest, [Burgess] stated he was trying to make the charges go 'in such a direction.'" *Id*. (citing 2017 Ill. App. (3)160441-U at p. 4). However, Plaintiff does not establish a policy or custom by the Village of Glasford, nor does he establish Burgess is "an official with policy-making authority." *Dixon*, 819 F.3d at 348. Plaintiff provides this isolated incident as the sole basis for his *Monell* claim, but "considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985).

Accordingly, since Plaintiff's Complaint does not contain sufficient factual allegations suggesting a policy or practice was responsible for the alleged constitutional violation, Defendants' Motion to Dismiss Count II is GRANTED.

### 3. COUNTS III, IV, and V (state law claims)

Counts III, IV, and V assert state law claims for malicious prosecution against Burgess, a *respondeat superior* claim against Glasford, and an indemnification claim against Glasford, respectively. Doc. 11, p. 5–6. Defendants move to dismiss Counts III, IV, and V on the basis that, since the federal claims (Counts I and II) should be dismissed, the Court should decline to exercise supplemental jurisdiction and the remaining state law claims should be dismissed. Doc. 13, p. 12. Since the Court is inclined to dismiss only Count II, Defendants' argument for the remaining claims is moot.

Accordingly, Defendants' Motion to Dismiss Counts III, IV, and V is DENIED.

## CONCLUSION

For the reasons stated herein, Defendant's Combined Motion to Dismiss (Doc. 13) is GRANTED as to Count II and DENIED with respect to the remaining claims.

Entered on this 22nd day of July, 2019.

s/ James E. Shadid<br>
James E. Shadid<br>
United States District Judge