UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| GREGORY A. SWITZER, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 18-cv-1421-JES-JEH |
| THE VILLAGE OF GLASFORD, ILLINOIS and ANDREW BURGESS, | ) |
| Defendants. | ) |

# ORDER AND OPINION

This matter is now before the Court on Defendants' Motion (Doc. 29) for Summary Judgment, Plaintiff's Response (Doc. 39), and Defendants' Reply (Doc. 40). Subsequent to briefing the summary judgment motion, the Court granted Defendants' agreed motion for leave to file supplemental briefs in light of the Seventh Circuit's decision in *Smith v. City of Chicago*. The parties have filed their respective briefs (Docs. 43, 44) and this matter is now ripe for adjudication. For the reasons set forth below, Defendants' Motion (Doc. 29) for Summary Judgment is granted.

### BACKGROUND

This case involves the arrest of Plaintiff, Gregory Switzer, by Officer Andrew Burgess during the early morning hours of October 1, 2015. Prior to his arrest, Switzer arrived home and noticed the sound and smell of gas emanating from a gas line between his house and a neighbor's. Switzer called 911 and Officer Burgess responded. After ensuring the gas line was shut off, Officer Burgess investigated the cause of the broken gas line and determined Switzer hit the gas line with his vehicle when driving home intoxicated. Switzer was arrested for driving under the influence of alcohol. The charges were later dismissed by the state court based on a

purported lack of probable cause, and that decision was affirmed by an Illinois appellate court. The issues currently before the Court are whether Officer Burgess had probable cause to arrest Switzer and whether Plaintiff's Fourth Amendment claim is timely. Because no dispute of material fact exists as to whether Officer Burgess has probable cause to arrest Plaintiff, the Court grants Defendant's Motion for Summary Judgment. Further, because Plaintiff's detention ended more than two years prior to him filing suit, the statute of limitations bars Plaintiff's claims.

The following facts are undisputed by the parties unless otherwise noted. Around 11:00 p.m. on September 30, 2015, Switzer called 911 to report a gas leak on 7th Street in Glasford, Illinois. He stated to the 911 operator that a "gas main just got hit." He did not answer the operator's question of whether the gas line had been hit by a vehicle. Officer Burgess was dispatched to the scene and his squad car video camera and microphone were activated.

When Officer Burgess arrived, he saw the lit taillights of a truck parked near where the severed gas line was located. Burgess further noted Switzer's presence outside in the front yard of the home next to the one with the broken gas line. Burgess told Switzer he needed to evacuate the area, to which Switzer responded by indicating he was the one who discovered the gas leak when he arrived home from work and called 911. While speaking with Switzer, Burgess noticed Switzer's heavily slurred speech, glassy, bloodshot, heavy eyes, trouble balancing, a smell of alcohol from his mouth and person, and stumbling while walking. Officer Burgess knew from his training and experience that these observations were consistent with intoxication. Switzer told Burgess the truck behind the house was his and he had arrived home 10 to 15 minutes earlier. He elaborated that "I pulled up in the backyard, and that shit's fucking blown."

Officer Burgess next informed Switzer that he had seen the lit taillights of Switzer's truck when he arrived, to which Switzer replied that the truck was off but that he "pulled in" and it

"takes a few minutes" for the lights to go off. Soon thereafter, the fire department arrived to attempt to shut the gas line off. When Switzer began to walk toward the gas leak, Officer Burgess had to stop him from trying to turn the gas line off himself. Once the fire department turned off the gas line, a firefighter told Burgess it looked like someone had hit the gas meter causing it to tear off the pipe. After the gas had dissipated, Burgess inspected the damage to the gas meter along with members of the fire department and concluded someone had driven through the area that night and hit the gas meter causing the line to break. Additionally, Burgess and the fire department inspected the tires on Switzer's truck and determined the tire tracks leading from the gas meter matched the tread of Switzer's truck tires, and that Switzer's truck had marks and scratches on it consistent with hitting the gas meter.

Next, Officer Burgess asked Switzer how much he had to drink that night, to which Switzer responded "enough." Switzer then reiterated his prior statement that he "pulled down the driveway, and the fucking shit was going off, and [he] called [911]." When confronted with information that the tire tracks near the gas line appeared to match Switzer's truck tires, Switzer responded that he had helped his neighbor move a refrigerator days earlier and "that shit stays." Switzer then repeated "I got home, and it was hissing, and called 911 right away." Officer Burgess again asked Switzer where he was coming from before he arrived home, to which he replied, "I was coming from wherever the fuck I was coming from." Switzer then stated he "pulled in the back about two hours ago." After Burgess confronts Switzer with his earlier statement that he was coming home from work, Switzer denied he made such a statement. Switzer then told Burgess the gas line was not broken when he left for work in the morning and that he had arrived home two hours before calling 911. He then told Burgess he arrived home one hour before calling 911.

3

Next, Officer Burgess again asked Switzer where he had come from when he arrived home, and Switzer said he and his neighbor Jeff (later identified as Jeff Ganieany) "went out for a little bit," to a bar. Burgess then asked if Switzer had come home by himself, and Switzer stated he had. When asked if Jeff had been in the truck with Switzer when he arrived home, Switzer stated he was not. Burgess then detained Switzer in his squad car to continue investigating the scene. He took pictures of the paint transfer between the truck and gas meter, damage to the exterior of the home, damage to the truck consistent with it hitting the gas meter, and the tire tracks. When Burgess returned to the squad car, Switzer told Burgess "one of the these kids in the neighborhood" hit the gas line "with a four-wheeler" but could not provide further information. Burgess then asked for Jeff's phone number, but Switzer stated he did not have it and did not "hang out at all" with Jeff. Burgess then reminded Switzer he previously stated he went to the bar with Jeff, but Switzer insisted that was a lie. He also told Burgess "I pulled in, and I fucking called you guys. I pulled in, it was fucking spewing. That's what it is. It is what it is." Switzer stated "I pulled down the alley." An Ameren employee called to the scene to fix the gas line told Burgess he could see tire marks and it looked to him like a tire hit the gas meter.

Officer Burgess called for backup to assist him with having Switzer perform a field sobriety test as Switzer had become belligerent. Burgess removed Switzer from the squad car to have him perform field sobriety tests. Asked again how much he had to drink, Switzer responded "one beer." He further told Burgess "you did not see me driving, so I'm done." After Switzer refused the field sobriety tests, he was placed under arrest. Switzer attempted to pull away from Burgess and had to be physically controlled by the officers present during his arrest. Switzer was then transported to the Peoria County Jail, where he provided a breath sample registering a 0.203 blood alcohol concentration. Switzer was subsequently charged with driving under the influence

of alcohol. At his deposition, Switzer testified that he could not remember why he would have told Burgess he "pulled down" the driveway or what he meant when he told Burgess he had "pulled in back." Finally, Switzer testified that if he had been driving between 10 p.m. and midnight he would have been driving intoxicated.

In his Response to Defendants' Motion for Summary Judgment, Plaintiff sets forth the following additional facts which he purports to be material. Doc. 39. Plaintiff submits that Jeff Ganieany was driving on the night of the gas leak, and Officer Burgess never contacted him. All Burgess did was drive by Ganieany's home and the bar, even though he knew the bar was closed at that time. Prior to September 30, 2015, Burgess had never seen Switzer's truck and was not aware of what damage was on the truck. Burgess never interviewed any witness that placed Switzer behind the wheel of the truck, confirmed he had been at a bar, or saw Switzer strike the gas line. Burgess had no training in accident reconstruction. Further, Burgess confirms in the video that he was trying to make the investigation go towards a DUI. Switzer disagrees he drove from the bar to his house. When he and Jeff Ganieany pulled up, it was in Jeff's van. When he said he pulled up in the video, he was referring to being a passenger.

## LEGAL STANDARD

Summary judgment is appropriate where the movant shows, through "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations … admissions, interrogatory answers, or other materials" that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In resolving a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material

dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

In order to withstand a motion for summary judgment, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When presented with a motion for summary judgment, the Court must construe the record "in the light most favorable to the nonmovant and avoid[] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). If the evidence, however, is "merely colorable, or is not significantly probative" or merely raises "some metaphysical doubt as to the material facts," summary judgment may be granted. *Liberty Lobby*, 477 U.S. at 249–50; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, in order to overcome the undisputed facts set forth in a defendant's motion for summary judgment, a plaintiff cannot rest on the allegations in his complaint but must point to affidavits, depositions or other evidence of an admissible sort that a genuine dispute of material fact exists between parties. Fed. R. Civ. P. 56(e)(2); *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

DISCUSSION

**(1) Statute of Limitations**

Following briefing on Defendants' Motion for Summary Judgment, Defendant sought and was granted leave to file a supplemental brief regarding the issue of the statute of limitations in light of the Seventh Circuit's recent decision in *Smith v. City of Chicago*, 3 F.4th 332 (June 28, 2021); Doc. 43. In their supplemental brief, Defendants note *Smith* resolved two open questions of law in this circuit that are dispositive to the timeliness issue in this case. First, *Smith* held "even when charges remain outstanding, a Fourth Amendment claim for unlawful pretrial

detention accrues upon the plaintiff's release from detention, and not upon the favorable termination of the charges against the plaintiff." *Id*. at 339. Second, the court held "the standard bond conditions that Smith experienced did not constitute a continuing seizure." *Id*. at 340. Applying *Smith* to the undisputed facts of this case, Plaintiff's limitations period (two years under Illinois law, 735 ILCS 5/13-202) began to run on October 1, 2015, when he was released on bond.[1] Further, Plaintiff's bond conditions were the same as those considered in *Smith*—Switzer was required to appear in court and to request permission to leave the state. These conditions "do not fit within the historical and judicially recognized framework of what constitutes a seizure." *Id*. at 341. Further, nothing in the record suggests Plaintiff requested to leave the state but was denied permission to do so. *See id*. Following *Smith*, Plaintiff's Complaint, filed on November 21, 2018, exceeded the two-year statute of limitations by over a year. This action is therefore untimely, and Defendant is entitled to dismissal of this case with prejudice.

**(2) Whether Probable Cause Supported Plaintiff's Arrest**

Next, even if Plaintiff's claims were timely, they fail on the merits. Plaintiff's federal claim under 42 U.S.C. §1983 arises under the Fourth Amendment and asserts Defendants lacked probable cause to justify his detention. *See* Doc. 16 at 4, n.1 (reiterating that there is no cause of action in this circuit under the Fourth Amendment for malicious prosecution; the correct characterization of such a claim would be for detention unsupported by probable cause); *Manuel v. City of Joliet, Ill.*, 903 F.3d 667 (7th Cir. 2018). The remainder of Plaintiff's claims are

---

[1] Before the Seventh Circuit decided *Smith*, this Court denied Defendants' motion to dismiss based on a finding that the limitations period did not begin to run until the termination of the criminal proceedings against Plaintiff. Doc. 16. In light of *Smith*, that conclusion is no longer an accurate statement of the law in this circuit.

dependent upon the success of the first—if Plaintiff's detention was supported by probable cause, Defendants are entitled to judgment in their favor.

"Probable cause to make an arrest exists when a reasonable person confronted with the sum total of the facts known to the officer at the time of the arrest would conclude that the person arrested has committed ... a crime." *United States v. Brown*, 973 F.3d 667, 706 (7th Cir. 2020) (quoting *Venson v. Altamirano*, 749 F.3d 641, 649 (7th Cir. 2014)). In Illinois, to commit the offense of driving under the influence, the defendant must have (1) driven or been in actual physical control of a vehicle; and (2) either been under the influence of alcohol or had an alcohol concentration of 0.08 or more. 625 ILCS 5/11-501. Here, Plaintiff does not contest he was under the influence of alcohol at the time of his arrest. Thus, the Court's probable cause inquiry is confined to whether Officer Burgess had probable cause to believe Switzer had driven his truck at the time he was under the influence of alcohol.

In assessing whether probable cause existed in this case, the Court is aided by the dash cam video and audio recordings submitted in support of Defendants' Motion for Summary Judgment. *See* Doc. 30.[2] The following excerpts summarize the conduct and statements captured by the recording which are material to the probable cause inquiry.

> Video at 7:15—
> Q. When did you get home?
> A. 10-15 minutes ago … I pulled up in the back yard and that shit's fucking blown.
>
> Video at 13:38—
> Q. Greg do you still have your truck back behind your house running?
> A. It's shut off.
> Q. Okay because I saw taillights when I first came down through here.
> A.  I pulled in, I think … it takes a little bit before it goes off. It's not running.
>
> Video at 40:40—
> Q. Greg you didn't back into this did you?

---

[2] Although this document lists only the 911 recording, the DVD referenced therein also includes the dash cam video and audio recordings. Thus, all future references to the video will be cited as "Video at _:_:_."

A. No. I'm back there.

Video at 43:00—
Q. Did you back into that?
A. No. I did not. I pulled down the driveway and the fucking shit was going off and I called you guys.
Q. You just got home from work, that's what you said?
A. No.
Q. Okay well that's what you told me earlier, you said you just got home from work and heard this going off.
A. I did not say I got home from work.
Q. Oh ok well I'm sorry, I'm pretty sure you said you got home from work.
A. I got home and heard the hissing.
Q. And you called 911 right away?
A. I called 911 right away.
Q. Where were you coming from, you were coming from work?
A. I was coming from wherever the fuck I was coming from.

Video at 45:08—
Q. Why didn't you just call and say hey, I hit this meter and its spewing gas?
A. I pulled in the back two hours ago.
Q. Well you just told me as soon as you got home you called 911. That's not two hours ago.
A. You're not gonna fucking put this on me.

Video at 47:47—
A. I got home like an hour or so ago and this thing was fucking blowing up.

Video at 48:30—
Q. Was Jeff there?
A. No.
Q. When you came home you came home by yourself?
A. Yeah.
Q. Okay so he wasn't in the truck with you?
A. No.
Q. So he's probably still at the bar then?
A. I don't know.

Video at 1:08:50—
A. I pulled in and I fucking called you guys. I called in, it was fucking spewing, that's what it is. It is what it is.
Q. Okay so when you came home you just pulled up in front of the house and got out and heard that thing spewing?
A. Where my truck is in the back of the house I pulled up and it was spewing, I called you guys.

9

Video at 1:11:32—
A. I pulled down the fucking alley, [unintelligible] and the shit's fucking blowing.

In short, during the course of Burgess's investigation, Switzer made admissions that (1) when he arrived home, the gas line was spewing; (2) he had arrived home very recently; (3) he had arrived home in his truck; and (4) no one else was in the truck with him. Further, Switzer does not dispute he was intoxicated between 10 pm and midnight. *See* Doc. 29 at 9, ¶64.

"Determinations of probable cause are naturally based on probabilities, and a finding of probable cause 'does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime.' " *United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003) (quoting *United States v. Carrillo,* 269 F.3d 761, 766 (7th Cir. 2001)). Based on the admissions identified above, Officer Burgess reasonably concluded he had probable cause to arrest Switzer for driving under the influence of alcohol. Switzer has attempted, both at the time of the incident and over the course of his criminal and civil proceedings, to offer alternative explanations for how he arrived home on the night of the incident. *See Funches*, 327 F.3d at 587 ("In reviewing probable-cause determinations, it is common for courts to consider possible innocent alternatives that might explain the facts before the agents. Of course, the mere existence of innocent explanations does not necessarily negate probable cause, but considering innocent, alternative explanations is often helpful."). After the incident, Plaintiff's explanation changed to a story about how Jeff Ganieany drove him home in his van. And when Switzer said he "pulled up" in his truck, he really meant to say Jeff pulled up in his van. Doc. 39 at 4–5.

The problem with these explanations is that they all conflict with Switzer's own recorded statements at the time of the incident. As Justice Schmidt correctly noted, "[Switzer] himself refuted Ganieany's testimony." Doc. 39-2 at 11. Officer Burgess was entitled to rely on Switzer's

10

statements, and those statements placed him operating his truck, alone and drunk. Any explanation other than Switzer was driving drunk strains credulity. The only circumstance that could come to pass where a person could claim they arrived home alone in their vehicle drunk but were not operating the vehicle would be if that vehicle drove itself. While that possibility becomes ever-so-slightly more possible with advances in self-driving technology, it does not yet exist. Notwithstanding the state courts' contrary conclusion, Justice Schmidt was absolutely correct: Officer Burgess clearly had probable cause to arrest Switzer for the offense of driving under the influence. Accordingly, Defendants are entitled to summary judgment on each of Plaintiff's claims.

## CONCLUSION

For the reasons set forth above, Defendants' Motion (Doc. 29) for Summary Judgment is granted.

The Clerk is directed to close the case.

Signed on this 26th day of October, 2021.

> s/ James E. Shadid
> James E. Shadid
> United States District Judge